**Elijah ROBINSON, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 06–01–00159–CR.**

Court of Appeals of Texas, Texarkana.

Submitted May 31, 2002.

Decided July 25, 2002.

---

Tony Aninao, Houston, for appellant.

Dan McCrory, Asst. Dist. Atty., William J. Delmore, III, Harris County Asst. Dist. Atty., Houston, for appellee.

Before GRANT, ROSS, and CORNELIUS,* JJ.

## OPINION

Opinion by Justice CORNELIUS (Retired).

A jury found Elijah Robinson guilty of aggravated assault and set his punishment at fifteen years' confinement. On appeal, Robinson contends there was improper voir dire of the jury, there is legally and factually insufficient evidence to support his conviction, there was improper admission of extrinsic evidence of a defense witness' prior inconsistent statement, and he received ineffective assistance of counsel. We overrule these contentions and affirm the judgment.

Robinson first contends that he should be granted a new trial because the prosecutor asked a question at voir dire that caused a veniremember to be precommitted to convict Robinson. At voir dire, the prosecutor asked prospective jurors whether they could convict a defendant if the State had only one witness who was willing to testify that a crime occurred, if they believed that witness beyond a reasonable doubt. Seven venirepersons said they could convict in that circumstance. The prosecutor then asked, "What if there were more than one witness but maybe they don't want to testify or something like that? Can anyone think of a reason why someone else that saw this might not want to testify?" One venireperson answered "fear," and either the same or another venireperson answered "perhaps rela-

---

* William J. Cornelius, C.J., Retired, Sitting by Assignment.

tive."[1] According to Robinson, this shows that the prosecutor was able to precommit the venireperson to return a guilty verdict in this case by his use of a hypothetical of the "uncooperative witness" scenario.

To preserve error for review, a party must make a timely and specific objection that is followed by an adverse ruling. TEX.R.APP. P. 33.1. Robinson failed to make any objection to these questions during voir dire, so he has failed to preserve error, and we may not review the issue.

Robinson next complains that the evidence is legally and factually insufficient to sustain the conviction for aggravated assault with a deadly weapon. In our review of the legal sufficiency of the evidence, we employ the standards set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This requires us to view the relevant evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000). In our review, we must evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim.App.1999). In determining the factual sufficiency of the evidence, we review all the evidence in a neutral light and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Johnson v. State*, 23 S.W.3d at 7; *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996).

The complainant was Robinson's sister-in-law, Sandra Marie Mack. At the time of the alleged assault, Robinson and his wife, Joyce Simon Robinson, were separated, and Joyce Simon Robinson was staying at Mack's house. Mack testified as follows: Before the assault, she had told Robinson to stay away from her house. On the day in question, while standing outside at a neighbor's house, she saw Robinson drive to her home. She then went to her home, where she and Robinson argued. During this argument, Robinson went to his truck, got his gun, pointed it at Mack, threatened to kill her, and pulled the trigger. The gun jammed. Mack then went inside the house and called the police. At some point after Robinson left the house and before the police arrived, Robinson called the house and left this message on the answering machine: "Tell that bitch she lucky the gun jammed." One of the police officers who arrived at the scene testified that the details Mack related in her testimony were repeated to him by Mack that day. The officer also heard the message left on the answering machine and testified that it was consistent with what Mack had told him.

Robinson testified in his own defense that he went to Mack's house to take his wife some medicine. Although he admitted having a gun during the time of the alleged assault, he denied pointing it at Mack or threatening to kill her. Joyce Robinson testified she was at Mack's home at the time of the alleged assault, but that she did not see everything that occurred between Robinson and her sister, Mack. For example, she testified that she went to put on some pants during the incident, and she said that, although Mack told her Robinson pointed a gun at her, she never saw

---

1. The court reporter did not distinguish between venirepersons as they answered counsels' questions.

that. The prosecutor asked Joyce Robinson numerous questions, to which she either stated she did not remember or she gave no response at all, apparently being emotionally unable to do so. Among these questions were whether she remembered telling the police officer that the gun jammed and that her husband had threatened Mack's life; whether she had previously failed to tell the truth to investigators because of her fear of Robinson; whether she had previously stated that, when Robinson pointed the gun at her sister, she jumped in front of it; whether she had previously stated that the scar on her right palm was the result of Robinson's abuse; and whether she had previously confirmed that Robinson called and left the above-mentioned message on the answering machine. Six days after the alleged assault, Robinson was stopped while driving his vehicle. The police found a weapon in the vehicle which Mack testified was the same color, size, and shape as the weapon Robinson had used against her.

■ The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given their testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex.Crim.App. [Panel Op.] 1981). A jury is entitled to accept one version of the facts and reject another or reject any of a witness' testimony. *Id.* The evidence summarized above is both legally and factually sufficient for the jury to find Robinson guilty of the charged offense. We overrule Robinson's challenge to the sufficiency of the evidence.

■ Robinson next complains of the improper admission of extrinsic evidence of a defense witness' prior inconsistent statement. The prosecutor asked Joyce Robinson whether she had a scar on her palm, and she admitted that she did. The prosecutor then asked whether she remembered telling him and another prosecuting attorney the scar was from a wound inflicted by Robinson. Defense counsel objected to the relevance of this testimony, and the trial court overruled the objection. Later, the prosecutor called the other prosecutor, Peyton Z. Peebles, III, to the stand to testify about conversations he had with Joyce Robinson. Peebles testified that she showed him the scar on her palm as evidence of her husband's violent behavior. No objection was made to this testimony by Peebles, of which Robinson now complains. By failing to make a specific objection and obtain a ruling by the trial court, Robinson has failed to preserve error on this matter for appeal, and we may not review it. TEX.R.APP. P. 33.1.

■ Finally, Robinson alleges he received ineffective assistance of counsel. The two-pronged test for evaluating claims of ineffective assistance of counsel is set out by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted for Texas constitutional claims in *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex.Crim.App.1986). First, the defendant must show that his counsel's representation fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. at 688, 104 S.Ct. 2052. To prove this deficiency in representation, the defendant must demonstrate that his counsel's performance deviated from prevailing professional norms. *Id.; McFarland v. State*, 845 S.W.2d 824, 842–43 (Tex.Crim. App.1992). The defendant must also show prejudice. This requires the defendant to show there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. 2052. The failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other. *Id.* at 697, 104 S.Ct. 2052.

Robinson alleges ineffective assistance of counsel on the basis that his trial counsel never filed a *"Theus"* motion to limit the prosecutor's impeachment of Robinson with his two prior convictions for unlawfully carrying a firearm. *See Theus v. State,* 845 S.W.2d 874, 881–82 (Tex.Crim.App. 1992). We need not consider whether a *Theus* motion would have been appropriate in these circumstances, because the testimony of which Robinson now complains was arguably pursuant to trial strategy. Robinson's strategy at trial appears to have been to be honest about his gun possession and to show that Mack lied about the gun and was in a good position to do so because she knew he always carried a gun. Allowing the prosecutor to introduce into evidence his arrests and jail time for possession of a weapon was conceivably consistent with counsel's trial strategy of showing that, by necessity, Robinson always carried a gun for his own protection and that Mack, knowing this, fabricated the story about the gun. As Robinson has failed to show that counsel's actions were not sound strategy, he has failed in his burden to show ineffective assistance of counsel.

Moreover, Robinson cannot show prejudice as required by *Strickland.* Given the incriminating testimony of Mack, the police officers, the investigators, and Robinson's wife—all that she did and did not say—the mere admission by Robinson that he had been arrested and incarcerated for possessing a gun can hardly be said to undermine confidence in the outcome. Robinson's failure to demonstrate prejudice as required by *Strickland* precludes any relief. *Ladd v. State,* 3 S.W.3d 547, 570 (Tex.Crim.App.1999).

The judgment is affirmed.

